UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIEGO RAMIREZ,<br><br>    Petitioner,<br>vs.<br>BEN CURRY, Warden,<br><br>    Respondent. | No. C 06-6621 MMC (PR)<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

## INTRODUCTION

On August 7, 2006, petitioner Diego Ramirez, a California state prisoner proceeding pro se, filed, pursuant to 28 U.S.C. § 2254, the above-titled petition for a writ of habeas corpus.[1] For the reasons stated herein, the petition is hereby DENIED.

## BACKGROUND

In 1987, petitioner shot and killed the victim, Juan Cruz ("Cruz"), outside a bar in Long Beach, California. (Ans. Ex. 7 at 1.) A jury convicted petitioner of second degree murder, and found true an allegation that petitioner personally used a firearm in the commission of the murder. The trial court sentenced petitioner to seventeen years to life in prison, and he was received at the California Department of Corrections on April 5,

---

[1] The action was filed initially in the Central District; it subsequently was transferred to the Northern District, and was received herein on October 24, 2006.

1

1988. (Id. Ex. 3 at 1.) In December 2003, the Board found petitioner unsuitable for parole, on grounds that he "would pose an unreasonable risk of danger to society or a threat to public safety if released from prison at [that] time." (Id. Ex. 3 at 53.)

In reaching its decision, the Board accepted the following facts taken from the state appellate court's decision on petitioner's direct appeal:

> [Petitioner], while armed with a handgun which he carried in his waistband, visited a bar in Long Beach. Later, upon leaving, he was followed by the victim. As [petitioner] reached the door, he suddenly turned and fired two shots at the victim killing him. When the victim's brother, who was in the bar, started toward where the victim was lying, [petitioner] stated: "Don't get involved or I'll kill you too."
>
> [Petitioner], at trial, essentially claimed to have acted in self defense. He testified that the victim menaced him with a six-inch long knife and demanded money. According to [petitioner] he produced the gun in response to an attack upon him with the knife although he claimed that he did not intend to fire the gun. Apparently, no one else saw the victim menace [petitioner] in any way.

(People v. Ramirez, 264 Cal. Rptr. 161, 162–63 (Cal. Ct. App. 1989).[2]

At the parole hearing, the Board reviewed petitioner's record, including the circumstances of his commitment offense and his behavior in prison.[3] With respect to the commitment offense, the Board found the offense was carried out in a manner that was "especially [ ] vicious and brutal," "dispassionate," and "which demonstrates [an] exceptionally insensitive disregard for human sufferings." (Ans. Ex. 3 at 53, 54.) The Board described to petitioner the facts on which this determination was based:

> [Y]ou had been drinking for most of the day and as noted you were intoxicated and this happened around 10:30 in the evening. You were at a bar together with Mr. Cruz. You were exiting the bar, you pulled a gun from your waistband and for no real provocation that we can find you shot this man twice, shot him twice, causing his demise . . . You confronted the victim's brother, telling him that you would shoot him as well.

(Id. at 53–54.) The Board further found that the "[m]otivation for the crime was

---

[2] In lieu of reciting these facts directly into the record, the presiding commissioner incorporated the above-quoted statement of facts by reference. (Ans. Ex. 3 at 7; Ex. 6 at 2.)

[3] Petitioner has no record of criminal activity prior to the commitment offense. (Ans. Ex. 3 at 55.)

2

inexplicable or very trivial, had to do with alcoholism, possibly drugs, supposedly owing the gentleman money, poor impulse control." (Id. at 54.)

The Board also examined petitioner's institutional record. The Board noted that petitioner "has failed to develop a marketable skill." (Id. at 55.) Nor, the Board stated, has petitioner "sufficiently participated in beneficial self help and therapy programming," as evidenced by the fact that petitioner had been "in AA for over 10 years and yet he doesn't' know the steps." (Id. at 55; see also id. at 21.) Also on petitioner's record were two serious disciplinary infractions, as well as six minor infractions. (Id.) The Board acknowledged that petitioner's latest psychological report was "adequate." (Id.) In particular, although the report found that petitioner posed a low to moderate degree of threat if released from prison (id. at 25; Ex. 7 at 3), the Board observed that petitioner's "gains [were] recent," (id. at 57). In the Board's opinion, petitioner needed to demonstrate the ability to maintain these gains over an extended period of time. (Id.)

After a full hearing, during which all of the above evidence was considered, the Board found petitioner unsuitable for parole. (Id. at 53.) In response to the Board's decision, petitioner filed state habeas petitions, later denied, in the Los Angeles Superior Court, California Court of Appeal, and California Supreme Court. (Pet. at 4.)

In 2006, petitioner filed the instant federal habeas petition, alleging that the Board violated a federally protected liberty interest in release on parole by denying him parole based on the circumstances of the commitment offense.

**DISCUSSION**

**A.    Standard of Review**

This Court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); Rose v. Hodges, 423 U.S. 19, 21 (1975).

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state

3

court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); <u>Williams v. Taylor</u>, 529 U.S. 362, 412–13 (2000). A federal court must presume the correctness of the state court's factual findings. 28 U.S.C. § 2254 (e)(1). Habeas relief is warranted only if the constitutional error at issue had a "substantial and injurious effect or influence in determining the jury's verdict." <u>Penry v. Johnson</u>, 532 U.S. 782, 795 (2001) (internal quotation and citation omitted).

The state court decision implicated by 2254(d) is the "last reasoned decision" of the state court. See <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 803–04 (1991); <u>Barker v. Fleming</u>, 423 F.3d 1085, 1091–92 (9th Cir. 2005). Where there is no reasoned opinion from the highest state court to have considered the petitioner's claims, the district court looks to the last reasoned state court opinion, which, in this instance, is the second opinion of the Los Angeles Superior Court. (Ans. Ex. 18);[4] see <u>Nunnemaker</u>, 501 U.S. at 801–06; <u>Shackleford v. Hubbard</u>, 234 F.3d 1072, 1079 n. 2 (9th Cir. 2000).

**B.    Petitioner's Claim**

Petitioner claims the Board's continued reliance on the circumstances of the commitment offense violates his right to due process. (Pet. at 5.) The superior court

---

[4] The record includes two opinions by the state superior court addressing petitioner's claims arising from the Board's December 2003 decision. In the first of said opinions, the superior court found the Board's decision void because it relied entirely on the circumstances of the commitment offense "without regard to the public safety implications of [p]etitioner's offense as it compares with other similar offenses and in light of the terms prescribed by the legislature for such offenses." (Ans. Ex. 17 at 2.) The state court stayed execution of its order, however, pending the California Supreme Court's decision in <u>In re Dannenberg</u>, 125 Cal.Rptr. 2d 458 (Cal. Ct. App. 2002). After the California Supreme Court issued its decision in that action, the superior court denied the petition, concluding that the Board is not required to use the sentencing matrix until it has concluded that an inmate is suitable for parole. (Ans. Ex. 18.)

4

rejected the claim, finding that the seriousness of petitioner's crime creates a "bar [that] is seemingly very high for petitioner in terms of when his sentence will become 'grossly disproportionate.'" (Ans. Ex. 18 at 2.)

A denial of parole complies with due process provided there is "some evidence" to support the parole board's decision. A parole board's decision deprives a prisoner of due process if such decision is not supported by "some evidence in the record," or is otherwise "arbitrary." See Superintendent v. Hill, 472 U.S. 445, 454–55 (1985); Sass v. California Bd. of Prison Terms, 461 F.3d 1123, 1129 (9th Cir. 2006). Additionally, the evidence underlying the parole board's decision must have "some indicia of reliability." See McQuillion v. Duncan, 306 F.3d 895, 904 (9th Cir. 2002). Accordingly, if a parole board's determination with respect to parole suitability is to satisfy due process, such determination must be supported by some evidence having some indicia of reliability. Rosas v. Nielsen, 428 F.3d 1229, 1232 (9th Cir. 2005).

Additionally, in assessing whether there is "some evidence" to support the Board's denial of parole, this Court must consider the regulations that guide the Board in making its parole suitability determinations. Pursuant to such regulations, "[t]he panel shall first determine whether the life prisoner is suitable for release on parole[;] [r]egardless of the length of time served, a life prisoner shall be found unsuitable for and denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison." 15 Cal. Code Regs. § 2402(a). The regulations enumerate various circumstances tending to indicate whether or not an inmate is suitable for parole. Id., § 2402(c)–(d).[5] One circumstance tending to show an inmate's unsuitability is that

---

[5] The circumstances tending to show an inmate's unsuitability are: (1) the commitment offense was committed in an "especially heinous, atrocious or cruel manner;" (2) previous record of violence; (3) unstable social history; (4) sadistic sexual offenses; (5) psychological factors such as a "lengthy history of severe mental problems related to the offense;" and (6) prison misconduct. 15 Cal. Code Regs. § 2402(c). The circumstances tending to show suitability are: (1) no juvenile record; (2) stable social history; (3) signs of remorse; (4) commitment offense was committed as a result of stress which built up over time; (5) Battered Woman Syndrome; (6) lack of criminal history;

5

the crime was committed in an "especially heinous, atrocious or cruel manner." Id., § 2402(c). Two factors that the parole authority may consider in determining whether such a circumstance exists are whether "[t]he offense was carried out in a manner that demonstrates an exceptionally callous disregard for human suffering," and whether "[t]he motive for the crime is inexplicable or very trivial in relation to the offense." Id., § 2402(c)(1)(D) & (E). In addition to these factors, the Board is to consider "all relevant, reliable information available." Id., § 2402(b).

It is now established under California law that the task of the Board is to determine whether the prisoner would be a danger to society if he or she were paroled. See In re Lawrence, 44 Cal. 4th 1181 (2008). Consequently, the constitutional "some evidence" requirement is that there exists some evidence that the prisoner constitutes such a danger, not simply that there exists some evidence of one or more of the factors listed in the regulations as considerations appropriate to the parole determination. Id. at 1205–06.

In that regard, however, a parole authority's continued reliance on the circumstances of the commitment offense as the sole basis for denying parole can, over time, raise due process concerns. See Biggs v. Terhune, 334 F.3d 910, 916 (9th Cir. 2003). "[I]n some cases, indefinite detention based solely on an inmate's commitment offense, regardless of the extent of his rehabilitation, will at some point violate due process, given the liberty interest in parole that flows from the relevant California statutes." Irons v. Carey, 505 F.3d 846, 854 (9th Cir. 2007).

Here, the Court cannot find that the state court was unreasonable in concluding there is some evidence to support the Board's decision that petitioner would pose a danger to society if released. The record contains some evidence to support the Board's finding, including the circumstances of the commitment offense, and petitioner's behavior in prison.

---

(7) age is such that it reduces the possibility of recidivism; (8) plans for future including development of marketable skills; and (9) institutional activities that indicate ability to function within the law. Id. § 2402(d).

6

First, evidence exists to support the Board's determination that the circumstances of the commitment offense indicated petitioner presented a risk of danger to society if released. The record contains evidence that the commitment offense was committed in an "especially heinous, atrocious or cruel manner," a circumstance tending to show parole unsuitability, see 15 Cal. Code Regs. § 2402(c), in that, as the Board found, the offense was carried out in a manner that was "especially [ ] vicious and brutal," "dispassionate," and "which demonstrates [an] exceptionally insensitive disregard for human suffering[ ]." (Ans. Ex. 3 at 53, 54.) Specifically, petitioner, while inebriated and without apparent provocation, shot and killed the victim at close range and threatened the victim's brother when he endeavored to come to the victim's aid as he lay dying on the floor. Under these circumstances, the Board's description of the offense as "dispassionate" and "especially [ ] vicious and brutal" is not unreasonable. While at some point, the circumstances of the commitment offense may cease to have probative value, they constitute, for purposes of the Board's determination in December 2003, some evidence of petitioner's dangerousness.

Additionally, petitioner's institutional behavior supplied further evidence of petitioner's unsuitability for parole. While in prison, petitioner had committed at least eight disciplinary infractions. (Ans. Ex. 7.) Also, the record supports the Board's determination that petitioner had not adequately participated in self-help programming. Because the Board relied on this evidence in addition to the circumstances of the commitment offense, petitioner's claim that the Board's decision violated his right to due process by relying solely on the unchanging facts of the commitment offense is without merit.

## CONCLUSION

Because the record contains, at a minimum, some evidence to support the Board's determination that petitioner would present an unreasonable risk of danger to society if released, the Court finds the state court's determination was neither contrary to nor an unreasonable application of clearly established Supreme Court precedent, nor can the

7

Court say it was based on an unreasonable determination of the facts.

Accordingly, the petition for a writ of habeas corpus is hereby DENIED.

The Clerk shall enter judgment in favor of respondent and close the file.

**IT IS SO ORDERED.**

DATED: February 11, 2010

_____
MAXINE M. CHESNEY
United States District Judge